## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE: GOOGLE DIGITAL ADVERTISING
ANTITRUST LITIGATION

This Document Relates to:

*AIM Media Ind. Operating, LLC v. Google, LLC*,
No. 1:21-cv-06912-PKC (S.D.N.Y.)

*AIM Media Midwest Operating, LLC v. Google,
LLC*, No. 1:21-cv-06884-PKC (S.D.N.Y.)

*AIM Media Tex. Operating, LLC v. Google, LLC*,
No. 1:21-cv-06888-PKC (S.D.N.Y.)

*Brown Cnty. Publ'g Co., Inc. v. Google, LLC*, No.
1:21-cv-06915-PKC (S.D.N.Y.)

*Capital Region Indep. Media LLC v. Google LLC*,
No. 1:22-cv-06997-PKC (S.D.N.Y.)

*Clarksburg Publ'g Co., d/b/a WV News v. Google,
LLC*, No. 1:21-cv-06840-PKC (S.D.N.Y.)

*Coastal Point LLC v. Google, LLC*, No. 1:21- cv-
06824-PKC (S.D.N.Y.)

*Eagle Printing Co. v. Google, LLC*, No. 1:21- cv-
06881-PKC (S.D.N.Y.)

*ECENT Corp. v. Google, LLC*, No. 1:21-cv- 06817-
PKC (S.D.N.Y.)

*Emmerich Newspapers, Inc. v. Google, LLC*, No.
1:21-cv-06794-PKC (S.D.N.Y.)

*Flag Publ'ns, Inc. v. Google, LLC*, No. 1:21-cv-
06871-PKC (S.D.N.Y.)

*Gale Force Media, LLC v. Google, LLC*, No. 1:21-
cv-06909-PKC (S.D.N.Y.)

*Gould Enters., Inc. v. Google,  LLC*, No. 1:22-cv-
01705-PKC (S.D.N.Y.)

*HD Media Co., LLC v. Google, LLC*, No. 1:21-cv-
06796-PKC (S.D.N.Y.)

*Journal Inc. v. Google, LLC*, No. 1:21-cv-06828-
PKC (S.D.N.Y.)

Case No. 1:21-md-03010 (PKC)

**META PLATFORMS, INC.'S
MEMORANDUM OF LAW IN
OPPOSITION TO NEWSPAPER
PLAINTIFFS' MOTION TO
AMEND**

*Neighborhood Newspapers, Inc. v. Google LLC*, No. 1:21-cv-10188-PKC (S.D.N.Y.)

*Robinson Commc'ns, Inc. v. Google, LLC*, No. 1:21-cv-08032-PKC (S.D.N.Y.)

*Rome News Media, LLC v. Google LLC*, No. 1:21-cv-10186-PKC (S.D.N.Y.)

*Savannah Publ'g Co. v. Google, LLC*, No. 1:22-cv-01693-PKC (S.D.N.Y.)

*Something Extra Publ'g, Inc. v. Google, LLC*, No. 1:21-cv-09523-PKC (S.D.N.Y.)

*Southern Cmty. Newspapers, Inc. v. Google, LLC*, No. 1:22-cv-01971-PKC (S.D.N.Y.)

*Times Journal, Inc. v. Google LLC*, No. 1:21-cv-10187-PKC (S.D.N.Y.)

*Union City Daily Messenger, Inc. v. Google, LLC*, No. 1:22-cv-01704-PKC (S.D.N.Y.)

*Weakley Cnty. Press, Inc. v. Google, LLC*, No. 1:22-cv-01701-PKC (S.D.N.Y.)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ....................................................................................................1

FACTUAL BACKGROUND ......................................................................................3

LEGAL STANDARD................................................................................................4

ARGUMENT ..........................................................................................................4

I.     THE NEWSPAPERS' PROPOSED NBA AMENDMENTS ARE
       FUTILE......................................................................................................4

       A.     The Newspapers' Header Bidding Amendments are Futile. ........................4

       B.     The Newspapers' Attempt to Salvage Their Auction Manipulation
            Theory Is Also Futile. ...................................................................9

II.    THE COURT SHOULD NOT ALLOW THE NEWSPAPERS TO MAKE
       FUTILE AMENDMENTS TO THEIR NBA CLAIM. ........................................14

CONCLUSION.....................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AD/SAT v. Associated Press*, 920 F. Supp. 1287 (S.D.N.Y. 1996) ....................................7

*In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76 (2d Cir. 2008) .................................15

*In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 KBF,
    2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014) ...........................................................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................7

*Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230 (2d Cir. 2008) ................................11

*City of New York v. Grp. Health Inc.*, 649 F.3d 151 (2d Cir. 2011) ..................................11

*Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199 (2d Cir. 2009) ....................................4

*Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prod., Inc.*, 129 F.3d 240
    (2d Cir. 1997) ............................................................................................................11

*Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc.*, 386 F.3d 485 (2d Cir. 2004) ..............11

*Gosain v. State Bank of India*, 414 F. App'x 311 (2d Cir. 2011) ......................................15

*IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank
    of Scotland Grp., PLC*, 783 F.3d 383 (2d Cir. 2015) .................................................4

*Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007) ..........................15

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129
    (2d Cir. 2013) ....................................................................................................5, 7, 12

*Monahan's Marine, Inc. v. Boston Whaler, Inc.*, 866 F.2d 525 (1st Cir. 1989) ...............12

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114 (2d Cir. 2012) .................4

*Spinelli v. Nat'l Football League*, 903 F.3d 185 (2d Cir. 2018) .........................................6

*Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90 (2d Cir. 1998) .................................12

*Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280 (2d Cir. 2011) ....................4

**Statutes & Rules**

Fed. R. Civ. P. 12 ........................................................................................................3, 4

Fed. R. Civ. P. 15 ......................................................................................................14, 15

Fed. R. Civ. P. 16 ......................................................................................................14, 15

Fed. R. Civ. P. 23 ..........................................................................................................14

## INTRODUCTION

After the States filed a complaint against Google in which they asserted a Section 1 claim premised on the Google/Meta Network Bidding Agreement (the so-called "NBA"), more than twenty newspapers filed copycat lawsuits around the country asserting the same claim (as well as others against Google). In support of their NBA claims, the various newspaper plaintiffs (collectively, the "Newspapers")[1] largely copied and pasted the States' allegations. They added nothing new of substance.

On September 13, 2022, this Court issued its Opinion and Order (Op. & Order ("Order"), Dkt. No. 308) dismissing the States' claim that the NBA establishes a violation of Section 1 of the Sherman Act. The Court's dismissal was based on its review of the States' third amended complaint ("States' TAC"), extensive briefing, oral argument and the full terms of the NBA. The Court devoted fourteen pages of the Order

---

[1] The plaintiffs in the individual newspaper actions include the plaintiffs in the following actions: *AIM Media Ind. Operating, LLC v. Google, LLC*, No. 1:21-cv-06912-PKC (S.D.N.Y.); *AIM Media Midwest Operating, LLC v. Google, LLC*, No. 1:21-cv-06884-PKC (S.D.N.Y.); *AIM Media Tex. Operating, LLC v. Google, LLC*, No. 1:21-cv-06888-PKC (S.D.N.Y.); *Brown Cnty. Publ'g Co., Inc. v. Google, LLC*, No. 1:21-cv-06915-PKC (S.D.N.Y.); *Capital Region Indep. Media LLC v. Google LLC*, No. 1:22-cv-06997-PKC (S.D.N.Y.); *Clarksburg Publ'g Co., d.b.a. WV News v. Google, LLC*, No. 1:21-cv-06840-PKC (S.D.N.Y.); *Coastal Point LLC v. Google LLC*, No. 1:21-cv-06824-PKC (S.D.N.Y.); *Eagle Printing Co. v. Google, LLC*, No. 1:21-cv-06881-PKC (S.D.N.Y.); *ECENT Corp. v. Google, LLC*, No. 1:21-cv-06817-PKC (S.D.N.Y.); *Emmerich Newspapers, Inc. v. Google, LLC*, No. 1:21-cv-06794-PKC (S.D.N.Y.); *Flag Publ'ns, Inc. v. Google, LLC*, No. 1:21-cv-06871-PKC (S.D.N.Y.); *Gale Force Media, LLC v. Google, LLC*, No. 1:21-cv-06909-PKC (S.D.N.Y.); *Gould Enters., Inc. v. Google, LLC*, No. 1:22-cv-01705-PKC (S.D.N.Y.); *HD Media Co., LLC v. Google, LLC*, No. 1:21-cv-06796-PKC (S.D.N.Y.); *Journal, Inc. v. Google, LLC*, No. 1:21-cv-06828-PKC (S.D.N.Y.); *Neighborhood Newspapers, Inc. v. Google, LLC*, No. 1:21-cv-10188-PKC (S.D.N.Y.); *Robinson Commc'ns, Inc. v. Google, LLC*, No. 1:21-cv-08032-PKC (S.D.N.Y.); *Rome News Media, LLC v. Google, LLC*, No. 1:21-cv-10186-PKC (S.D.N.Y.); *Savannah Publ'g Co. v. Google, LLC*, No. 1:22-cv-01693-PKC (S.D.N.Y.); *Something Extra Publ'g, Inc. v. Google, LLC*, No. 1:21-cv-09523-PKC (S.D.N.Y.); *Southern Cmty. Newspapers, Inc. v. Google, LLC*, No. 1:22-cv-01971-PKC (S.D.N.Y.); *Times Journal, Inc. v. Google, LLC*, No. 1:21-cv-10187-PKC (S.D.N.Y.); *Union City Daily Messenger, Inc. v. Google, LLC*, No. 1:22-cv-01704-PKC (S.D.N.Y.); and *Weakley Cnty. Press, Inc. v. Google, LLC*, No. 1:22-cv-01701-PKC (S.D.N.Y.).

to parsing the NBA's terms and explaining why the NBA could not plausibly be alleged to constitute a violation of the Sherman Act.

Faced with the inevitable dismissal of their original copycat NBA claims, the Newspapers now seek leave to file a proposed Consolidated Amended Complaint ("CAC", Dkt. No. 328-2) in a last-ditch effort to salvage a claim against Meta in this MDL that is primarily about Google.[2]  (*See* Newspapers' Joint Mot. for Leave To Amend ("Mot.") at 3, Dkt. No. 328.)  Even though the Court has clearly stated that leave to make any such non-conforming amendments is required, (Pre-Trial Order No. 2 ("PTO No. 2") ¶ 1, Dkt. No. 309), and the Court's prior orders establishing that the States' complaint would serve as a "bellwether" for the private claims, the Newspapers do not even bother to give the Court a reason to believe their proposed amendments solve the myriad problems that doomed the States' NBA claim.  Instead, they devote two conclusory sentences to the issue, asserting that their amended NBA claim contains "factual allegations not pled" in the States' complaint.  (Mot. at 3, 13-14.)  A review of their proposed amendment establishes otherwise.

As set forth below, the Newspapers' NBA claim remains substantively identical to the States' NBA claim already rejected by this Court.  The Newspapers still advance the same hollow theories:  (1) that Google and Meta entered into an agreement to thwart header bidding; and (2) that the terms of the NBA are themselves anticompetitive.  (*See* CAC ¶¶ 267-321.)  Yet there remain no plausible allegations establishing that Meta agreed with Google that it would abandon header bidding and the

---

[2] The Newspapers also seek leave to supplement their claims asserted only against Google.  Meta takes no position on these proposed amendments.

terms of the NBA remain the same as the ones this Court analyzed and found to be consistent with competition.

For these reasons, and as detailed further below, the Newspapers' proposed amendment is futile and their request for leave to amend their NBA claim should be denied.[3]

## FACTUAL BACKGROUND[4]

The Newspaper actions consist of 24 complaints that were originally filed in 18 judicial districts across the country.[5]  The complaints were filed by common counsel and are nearly identical in substance.  Each of the original complaints advances the same core claims:  (1) Google unlawfully monopolized the digital advertising market in violation of Section 2 of the Sherman Act; (2) Google and Meta entered into an agreement—the NBA—that unlawfully restrained trade in violation of Section 1 of the Sherman Act; and (3) Google was unjustly enriched by its conduct.

For the Court's convenience, rather than repeat information fully briefed elsewhere, Meta respectfully refers the Court to the Factual Background section of its Memorandum of Law in Opposition to Advertiser Class Plaintiffs' Motion to Amend for

---

[3] If the Court were to grant the Newspapers leave to amend their NBA claim, Meta intends to move to dismiss that claim under Rule 12(b)(6) and reserves all applicable arguments.

[4] All defined terms used herein shall have the same meaning as ascribed to those terms in Meta Platforms, Inc.'s Memorandum of Law in Opposition to Advertiser Class Plaintiffs' Motion to Amend.

[5] There is an additional Newspaper action, *Appen Media Group, Inc. v. Google, LLC, et al.*, Case No. 1:22-cv- 02905 (N. D. Ga.), that was filed in the Northern District of Georgia and which the Judicial Panel on Multidistrict Litigation ordered on August 8, 2022 be transferred to this Court.  (*See* J.P.M.L., MDL No. 3010, Dkt. No. 201.)  This case has not yet been formally transferred.

a detailed discussion of Google's motion to dismiss the States' complaint, the Court's

Order on that motion and the procedural posture of the current motions.

## LEGAL STANDARD

As the Newspapers concede, leave to amend should be denied if their

proposed claim would be futile.  (Mot. at 9.)  Claims are futile if they do not state a claim

or otherwise would not survive a motion to dismiss.  *IBEW Local Union No. 58 Pension*

*Trust Fund and Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389

(2d Cir. 2015) ("Proposed amendments are futile if they 'would fail to cure prior

deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil

Procedure.'  Thus, the standard for denying leave to amend based on futility is the same

as the standard for granting a motion to dismiss.") (quoting *Panther Partners Inc. v.*

*Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)) (internal citation omitted).[6]

## ARGUMENT

I.    **THE NEWSPAPERS' PROPOSED NBA AMENDMENTS ARE FUTILE.**

A.    **The Newspapers' Header Bidding Amendments are Futile.**

The Court's determination that the States (after four attempts) did not

plausibly plead an agreement between Google and Meta to thwart header bidding is fatal

to the Newspapers' proposed amended NBA claim based on the same premise.

---

[6] The Newspapers ask that this Court reserve any futility arguments until a future motion to dismiss, as was done with the briefing of the bellwether States' complaint.  (Mot. at 13 n.14.)  But while Pre-Trial Order No. 1 expressly "reserv[ed] any futility arguments for any motion to dismiss" the States' complaint (PTO No. 1 ¶ 5, Dkt. No. 4), the Court's order setting forth the amendment procedures governing the private actions does not limit the grounds on which Defendants may oppose amendment.  (*See* PTO No. 2 ¶¶ 1-4.)  *Cf. Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 294 (2d Cir. 2011) (applying *expressio unius est exclusio alterius*, the "familiar principal" that "the mention of one thing implies the exclusion of the other" (quoting *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 221 (2d Cir. 2009))).

In rejecting the States' NBA claim, the Court noted that "the 48-page NBA does not touch upon or purport to restrict Facebook's use of header bidding". (Order at 24.)  The terms of the NBA obviously have not changed.  The Court also noted that none of the internal Meta documents cited by the States contained even "a hint that Facebook was offering a commitment to substantially curtail the use of header bidding or that Google was insistent on such a commitment".  (*Id*.)  Here too, the Newspapers have not identified any new facts from internal documents suggesting otherwise.

Because there is no direct evidence of a conspiracy, the Newspapers resort to repackaging the same basic story that has already been presented to the Court in the hope that they can somehow get to a different result by piecing together the same building blocks in a slightly different manner.  But none of the Newspapers' proposed factual allegations support an inference of conspiracy, as "[a]n inference of conspiracy is not supported by acts that 'made perfect business sense.'"  (*Id.* at 22 (citing *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 138 (2d Cir. 2013)).)  Ultimately, the Court rejected the States' NBA claim because the States had failed to account for "Facebook's motivation to use its economic clout as an advertiser to drive the hardest bargain it could with Google" as well as Google's "legitimate, pro-competitive desire to obtain as much business as possible from Facebook."  (*Id*.)  The same remains true here.

As an initial matter, the Newspapers' proposed amendments do not (as they claim) contain additional facts.  For example, the Newspapers prominently add references to a March 2017 Facebook blog post publicly announcing Facebook's support for header bidding, (*see* CAC ¶¶ 283, 289), but that same blog post was incorporated by

reference in the States' TAC.  (*See, e.g.*, States' TAC ¶¶ 414, 417.)  The same is true for the multiple paragraphs of proposed amendments that purport to marshal evidence that Meta supported header bidding and Google did not.  (*See, e.g.*, CAC ¶¶ 279-281, 284-285.)

The Newspapers also baldly assert that the alleged conspiracy embodied in the NBA was even *broader* than the supposed desire to thwart header bidding, and *also* included an agreement by Meta to abandon entry "in the publisher ad server market and mediation tool market", (*id*. ¶ 297), and "cede[] web markets to Google", (*id*. ¶ 286).  As to each, the Newspapers fail to offer any new facts, and instead resort to unsupported assertions such as the statement that, prior to the NBA, "Facebook was actively trying to enter and compete in the publisher ad server market and mediation tool market by building or acquiring a competitive product".  (*Id*. ¶ 297.)  But conclusory assertions such as this cannot defeat a motion to dismiss (or by extension avoid a finding of futility).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (conclusory allegations "not entitled to be assumed true"); *Spinelli v. Nat'l Football League*, 903 F.3d 185, 212 (2d Cir. 2018) (same).[7]

In any event, just as the NBA does not "touch upon or purport to restrict Facebook's use of header bidding", (Order at 24), it does not touch upon or purport to restrict Meta from building or operating its own ad server or in-app mediation tool.  The

---

[7] Notably, the States offered more than just conclusory assertions and cited to internal documents that they alleged demonstrated that Meta viewed the possibility of building or buying its own ad tech as a "conceivable option".  (Order at 24.)  The States also specifically noted in their complaint that "FAN effectively left the market for web advertising in 2020".  (States' TAC ¶ 437.)  The Court nonetheless dismissed the States' NBA claim.

NBA also says nothing about Meta "ceding the web market"; to the contrary, it goes on at length about how the NBA would *apply* in the web market.  (*See* NBA ¶¶ 2.2(d), 2.4(b), Ex. A ¶ 1(a), Ex. A ¶ 3, Dkt. No. 221-1.)  Like the States, the Newspapers have thus failed to allege any facts that permit the plausible inference that unilateral actions by Meta (*i.e.*, the decision not to build its own ad server or in-app mediation tool and the deprecation of FAN for web display) were the product of an agreement with Google rather than independent business determinations.  (*See* Order at 21-22 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007) ("there is no reason to infer that the companies had agreed among themselves to do what was only natural anyway. . . ."); *Mayor & City Council of Baltimore*, 709 F.3d at 138 ("An inference of conspiracy is not supported by acts that 'made perfect business sense.'").)  To the contrary, their claims of a conspiratorial agreement are *implausible*.  According to the Newspapers' themselves, Google and Meta entered into the NBA in September 2018 and Meta did not announce the deprecation of its Audience Network web business until February 2020.  (CAC ¶¶ 286, 301).  *See AD/SAT v. Associated Press*, 920 F. Supp. 1287, 1315 (S.D.N.Y. 1996) (finding that the facts would not allow a reasonable juror to conclude that a defendant was a member of an alleged conspiracy in part because its agreement with an alleged co-conspirator occurred eight months after its termination of an agreement with the plaintiff).

Equally unavailing are the Newspapers' attempts to obfuscate the facts that the Court has already reviewed to make it seem like Google and Meta were competing in ways that the Court has not already considered.  (*See, e.g.*, CAC ¶¶ 290-295.)  While the Newspapers are absolutely right that Meta and Google competed as ad

networks prior to the NBA, they also correctly allege that the two companies *continued* to compete as ad networks well *after* the NBA was signed.  (*Id.* ¶¶ 302-303, 306-307.)  That Google and Meta compete as ad networks is not new news; as the Court explained in the Order, Google acts at various levels in the relevant distribution chain, including in its "capacity as the operator of an in-app network, and, in that context, it competed with Facebook for impressions offered at auction."  (Order at 28.)

Finally, the Newspapers seem to suggest that there must have been a conspiracy because they assert—contrary to the Court's conclusion—that the terms of the NBA made "no business sense" absent an intent to harm competition.  (*See, e.g.*, CAC ¶ 312.)  But, as described in more detail below, these assertions are fundamentally—and incorrectly—premised on the notion that there must have been a conspiracy if Google was willing to give Meta favorable business terms.   That is simply not the law, (Order at 22), and none of the purported additional facts set forth in the proposed amended complaint alters this Court's key holdings that (1) the terms of the NBA reflect reasonable business decisions that were "consistent with competition" (*id*. at 25-26) and (2) the effect of the NBA was procompetitive (*id.* at 32).[8]

---

[8] The Newspapers also allege that Meta was participating in Google ad auctions prior to entering into the NBA, (*see* CAC ¶ 294), perhaps in an attempt to undermine the Court's conclusion that the NBA made business sense for Google to get additional business from Meta.  But this is also not new.  As the States alleged and the Court explained, FAN would submit bids that ultimately got routed through Google's exchanges via header bidding or direct agreements with publishers.  (Order at 22 (explaining that "[i]t was called 'header bidding' because a publisher could insert a piece of code into the 'header' section of a publisher's webpage, which then collected information . . . and used that information to bid on multiple ad exchanges" and it "enabled publishers, including those who used Google's DFP ad server, to solicit live, competitive bids from multiple exchanges"); States' TAC ¶ 414 (noting Meta "announced it would submit bids from FAN to open web publishers using header bidding" via Amazon's "header bidding code library"); *id.* ¶ 354 (alleging that publishers using header bidding "continued to license DFP" in order to route and solicit bids from AdX).)

**B.      The Newspapers' Attempt to Salvage Their Auction Manipulation Theory Is Also Futile.**

In a section of their proposed amended complaint entitled "After Jedi Blue in the In-App Market", (CAC ¶¶ 306-321), the Newspapers attempt to save their NBA claim premised on the assertion that Google provided Meta with certain favorable terms that disadvantaged other bidders in auctions for in-app impressions.  These proposed amendments are futile for a multitude of reasons.

As an initial matter, the Newspapers' theory premised on the terms of the NBA is indistinguishable from the State's theory premised on those same terms.  The Newspapers contend that the NBA resulted in "less competition from rivals (less bid density and lower bids) and lower auction clearing prices . . . resulting in less money in the pockets of publishers".  (*Id.* ¶ 310.)  The States alleged that Google and Meta agreed to "limit[] the terms of competition between each other . . . [and] insulate[] their scheme from outside competition" through an "auction manipulation" scheme that provided special benefits for Meta.  (States' TAC ¶¶ 441, 443.)  The States further contended the overall effect of the alleged auction manipulation scheme was to "depress[] prices paid to developers."  (*Id.* ¶ 437.)  Both the Newspapers and the States rely on the same underlying provisions of the NBA to support their identical theory:  the volume-based

price concessions off Google's standard fee,[9] the timeout provision[10] and the information provision.[11]

    In their motion to amend, the Newspapers provide no reason for the Court to believe this theory has any more chance of success now than it did before.  Indeed, the proposed amendment does not even conform the claim to the antitrust standard that the Court has already ruled must be applied to any assessment of the NBA's terms.  In their proposed amended complaint, the Newspapers allege that the NBA is unlawful *per se* and do not even attempt to allege that the agreement is unlawful under the rule of reason. (*See* CAC ¶¶ 366-373.)  But this Court has already concluded that the rule of reason applies because the NBA was "principally a vertical agreement" given that Google and Meta did not enter into that agreement as horizontal competitors but instead as part of a vertical relationship in which Google was the auctioneer and Meta was the bidder. (Order at 28*.*)  The Newspapers do not add any allegations that would suggest otherwise (nor could they).[12]

    Yet another problem for the Newspapers' auction manipulation theory is that it is premised on alleged antitrust markets that they do not even attempt to define.

---

[9] *Compare* CAC ¶ 308, *with* States' TAC ¶ 428.

[10] *Compare* CAC ¶ 308, *with* States' TAC ¶ 429.

[11] *Compare* CAC ¶ 308, *with* States' TAC ¶ 431.  The Newspapers also cite to the NBA's provisions restricting Google's use of Meta's bid data, which also supported the States' NBA claim.  *Compare* CAC ¶ 309, *with* States' TAC ¶ 434.

[12] To the extent the Newspapers are alleging that the NBA should receive *per se* treatment because it reflected an agreement by Meta to forego entry into the ad server market or mediation tool market—which if it had occurred, could have put Meta in horizontal competition with Google (*see* CAC ¶¶ 286-289)—that theory is unsupported by the terms of the NBA and is implausible for the reasons explained above.

"To state a claim under [Section 1 of the Sherman Act], a plaintiff must allege a plausible relevant market in which competition will be impaired." *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 155 (2d Cir. 2011). "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008). The Newspapers assert that the markets relevant to their NBA claim "are the markets for in-app display ad networks and mediation tools for in-app inventory" (CAC ¶ 171), but nowhere attempt to define the parameters of those markets by reference to any reasonable substitutes. Plaintiffs' market allegations therefore cannot survive a motion to dismiss. *See In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 KBF, 2014 WL 4277510, at *14, *32 (S.D.N.Y. Aug. 29, 2014) (plaintiffs failed to "allege a plausible market" where purported market definitions were not "accompanied by allegations regarding product interchangeability, elasticities, or geographic boundaries").

The next problem for the Newspapers is that, as this Court held, "[u]nder the rule of reason, the plaintiff must show that defendants' challenged behavior had an actual adverse effect on competition as a whole in the relevant market.'" (Order at 30 (quoting *Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc.*, 386 F.3d 485, 507 (2d Cir. 2004) (internal quotation marks omitted)).) "Without any allegation as to how market-wide competition will be affected, [a] complaint fails to allege a claim on which relief can be granted." (*Id.* (quoting *Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prod.,*

11

*Inc.*, 129 F.3d 240, 245 (2d Cir. 1997)).)  "A plaintiff alleging harm to competition may, in lieu of showing actual harm, allege that defendants possess 'market power' in the relevant market."  (*Id.* (quoting *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 97 (2d Cir. 1998).)  The Newspapers fail to do either.

With respect to market power, there are no allegations that either Google or Meta has market power in either of the ill-defined markets they contend are relevant to their NBA claim.  With respect to competitive harm, the Newspapers allege that the terms of the NBA made no independent economic sense (presumably to Google) because—they claim—it allowed Meta to "bid less money".  (CAC  ¶¶ 307, 308.)  But the premise of this "bid less money" statement is the fact that Google gave Meta a price concession in return for Meta agreeing to a minimum spend threshold through Google's auctions.  The Court already rejected this argument from the States, holding that "[o]ffering favorable terms to a large potential customer, such as Facebook, undoubtedly had the effect of diverting business from a competing service, but this does not convert the agreement into an unreasonable restraint of trade."  (Order at 26 (citing *Monahan's Marine, Inc. v. Boston Whaler, Inc.*, 866 F.2d 525, 529 (1st Cir. 1989) (explaining that courts have found "nothing anticompetitive in the simple fact that a seller selectively cuts its prices, or offers other favorable terms, to some of its dealers, even though such discrimination harms the non-favored dealers") (Breyer, J.)).)  Instead, as the Court explained, these terms of the NBA "made perfect business sense."  (*Id.* at 22 (quoting *Mayor & City Council of Baltimore*, 709 F.3d at 138 (2d Cir. 2013) (internal quotation marks omitted)).)

The notion that the NBA's terms made no independent business sense for Meta is also completely contradicted by the Newspapers' other allegations.  In particular, the Newspapers claim that the NBA gave Meta "information, speed and other advantages" over other participants in the market.  (CAC ¶ 310.)  Or, as the Court put it in the Order, the NBA allowed Facebook to achieve "an opportunity to compete against Google for publishers' and developers' inventory on equal terms".  (Order at 32.)  That makes obvious business sense for Meta, and helps rather than hinders competition.[13]

Finally, as this Court previously noted, the NBA is expressly "not an exclusive agreement", (*id*. at 21 (citing NBA ¶ 19.10)), and nothing in the NBA prevents Google from offering the same favorable terms to other auction participants.  Thus, while the Newspapers complain that "Facebook receiv[ed] the same loaded dice in the in-app network market that Google had been winning for years", (CAC ¶ 311), they cannot shake the Court's conclusion that an agreement allowing Meta to better compete with Google—without limiting the ability of any other competitor to do the same—was "*entirely consistent with competition*".  (*Id.* at 25 (emphasis added).)

---

[13] The Newspapers also reference some alleged statements from unidentified "internal Facebook documents".  (CAC ¶¶ 314-315.)  That information includes the alleged "take rate"—or margin—that the Newspapers claim Meta retained in auctions held through Google's ad server.  (*Id.*)  The other alleged fact from these unidentified internal Meta documents is the claim that Meta planned to purchase sufficient volume of inventory per year (within 24 months of signing the NBA) to trigger the agreement's lowest mediation fee.  (*Id.* ¶ 315.)  While the Newspapers assert without any support that Meta had "little to no spend left" to use for header bidding or non-Google mediation tools, (*id.*), they do not explain why that must be the case or why it matters.  To the extent there is a document stating that Meta planned to spend a certain amount through the NBA prior to its deprecation of FAN for web advertising, the allegations do not explain why Meta would still spend that same amount for in-app advertising and, if it did, how that has anything to do with what Meta could or would spend elsewhere.  Any purported margin that Meta retained from auctions subject to the NBA also has no bearing on the reasons the Court dismissed the States' NBA claim.  In addition, as noted in Meta's Response in Support of Newspapers' Motion to Seal (Dkt. No. 342), "the circumstances surrounding how the Newspapers obtained access to commercially sensitive internal Meta documents remains unclear."

13

## II.    THE COURT SHOULD NOT ALLOW THE NEWSPAPERS TO MAKE FUTILE AMENDMENTS TO THEIR NBA CLAIM.

Perhaps because it is obvious that their amendments are futile, the Newspapers also request that the Court retract its prior orders that have set forth an efficient means for settling the pleadings in this complex MDL and allow them to make non-conforming amendments *without leave* pursuant to Rule 15(a)(1)(B).  (*See* Mot. at 7-8).[14]  That result is unwarranted.

At the outset of this MDL, the Court explained that it would treat the States' complaint as a bellwether pleading that it would resolve prior to addressing any motions to amend or motions to dismiss in the cases brought by the private plaintiffs. (Pre-Trial Order No. 1 ("PTO No. 1") ¶¶ 7-10, Dkt. No. 4; Sept. 24, 2021 Order ¶¶ 2-3, Dkt. 129.)  After issuing its ruling on Google's motion to dismiss the States' TAC, the Court issued Pre-Trial Order No. 2—"[p]ursuant to the authority of Rules 16(b) and 23(d)(1)" of the Federal Rules of Civil Procedure—setting forth the procedures for amendments to pleadings for the private cases.[15]  (Pre-Trial Order No. 2 ("PTO No. 2"), Dkt. No. 309.)  Those procedures do not permit Newspapers to amend their complaints as a matter of course, but rather set forth a schedule by which plaintiffs can seek the Court's permission to amend.  (*See* PTO No. 2 ¶ 1 ("[T]he Court anticipates granting leave to amend" where amended pleading contains only Conforming Amendments (emphasis

---

[14] The Newspapers concede that individual newspaper plaintiffs Brown County Publishing Company, Inc. and Multi Media Channels, LLC are not permitted to amend as of right under Rule 15(a)(1) because these parties have already amended their complaint once.  The Newspapers assert that these plaintiffs should be granted leave to amend under Rule 15(a)(2).  (Mot. at 8 n.10, 11 n.13.)

[15] Pre-Trial Order No. 3 applies the amendment procedures set forth in Pre-Trial Order No. 2 to any "Individual Action".  (Pre-Trial Order No. 3 ("PTO No. 3") ¶ 1, Dkt. No. 311.)

added)); *id*. ¶ 3 ("[A]ny [] plaintiff who wishes to amend its pleading to make amendments that do not fall entirely within the definition of Conforming Amendments may file a motion to amend within 21 days").)  The Newspapers concede that their proposed amendments to their NBA claim "do not fall within the Court's definition of Conforming Amendments".  (Mot. at 3.)

        The Court appropriately exercised its discretion in citing to Rule 16(b) and requiring motions for leave to amend to make non-conforming changes to the operative complaints.  The Second Circuit has confirmed that district courts have the discretion to place limits on the timing for amendments as of right.  *See Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (holding that "amendment of a pleading as a matter of course pursuant to Rule 15(a) is subject to the district court's discretion to limit the time for amendment of the pleadings in a scheduling order issued under Rule 16(b)").  Two of the Newspapers already used their amendment as of right; nothing prevented the others from doing so when they saw Google's motion to dismiss the NBA claims.  At bottom, the Newspapers ask this Court to render the amendment procedures set forth in its own pre-trial orders meaningless.  But allowing the Newspapers to amend their NBA claims as of right—particularly where, as here, they seek to assert claims that are virtually identical to the States' claims already dismissed by this Court—would frustrate the entire purpose of the Court's bellwether schedule.[16]

---

[16] In any event, even if the Newspapers were entitled to an amendment as of right at this time, denial of leave to amend would at most constitute harmless error because—as described above—the proposed amendments are futile.  *See In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 104 (2d Cir. 2008) (failure to allow amendment as of right was harmless error where proposed amendments were futile); *see also Gosain v. State Bank of India*, 414 F. App'x 311, 315 (2d Cir. 2011) (same).

**CONCLUSION**

For the foregoing reasons, Meta requests that the Newspapers' motion to amend the complaint be denied with respect to the NBA claim (Count II).

Dated: October 26, 2022

CRAVATH, SWAINE & MOORE, LLP

by  _____ /s/ *Kevin J. Orsini* _____
Kevin J. Orsini
Brittany L. Sukiennik

Worldwide Plaza
825 Eighth Avenue
New York, NY
(212) 474-1000
korsini@cravath.com
bsukiennik@cravath.com

*Attorneys for Meta Platforms, Inc. (f/k/a Facebook, Inc.)*

16